UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GERARD M. MARTINEAU    :
                :
vs.                 :    CR 07-129-ML
                :
UNITED STATES OF AMERICA :

**MEMORANDUM AND ORDER**

Mary M. Lisi, Chief United States District Judge.

Gerard M. Martineau has filed a *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 in the above proceeding. For the reasons that follow, that motion is denied.

## BACKGROUND AND TRAVEL

On November 2, 2007 Martineau, pursuant to a plea agreement, pled guilty to an information charging him with him two counts of mail fraud, in devising a scheme to fraudulently deprive the State of Rhode Island and its citizens of their intangible right to honest services, in violation of 18 U.S.C. §§1341 and 1346.[1] On February 22, 2008, Martineau was sentenced to 37 months imprisonment, followed by two years of probation. In addition, this Court imposed a criminal fine in the amount of $100,000. Judgment of conviction was entered on the same day. Martineau did not file any direct appeal.

On February 23, 2009 Martineau filed the instant motion to vacate sentence (Doc. #27). In

---

[1] In brief, Martineau was convicted of using the mails to as part of a scheme in which he accepted payments from a pharmacy corporation (CVS Pharmacy Corporation) and a health insurance company (Blue Cross Blue Shield of Rhode Island) in exchange for improperly using his positions in the Rhode Island General Assembly as Chairman of the House Committee on Corporations Committee and House Majority Leader to exercise inappropriate influence over pending legislation affecting one or both of those two entities. (See generally Information, Counts I and II.)

his motion, Martineau asserts two claims: (1) that in view of a recent state court decision determining that the speech in debate clause of the Rhode Island Constitution precluded a legislator from being charged with state ethics violations, the loss caused by his criminal conduct should be recalculated from $911,435.24 to zero and his offense level under the guidelines reduced accordingly, so as to reduce his term of incarceration; and (2) that he has exhibited exemplary conduct during his incarceration, which separately justifies a reduction in sentence. (See Memorandum in Support of Motion pursuant to 28 U.S.C. §2255 [Pet. Mem.] at 3-8.) The Government has filed a response, to which Martineau has replied,[2] and this matter is ready for decision.

## DISCUSSION

A.  General Principles

Title 28 U.S.C. § 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255(a).

Generally, the grounds justifying relief under §2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 184-185 (1979) ("An error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently

---

[2] See United States' Response to Gerard M. Martineau's Motion to Vacate, Set Aside or Correct Sentence under §2255 (Doc. #33) (Gov't Response) and Martineau's Answer to United States [sic] Response to §2255 Motion (Doc. #34) (Reply).

results in a complete miscarriage of justice.") (internal quotes omitted).

This Court notes preliminarily that neither of Martineau's claims challenge the jurisdiction of this court to convict and sentence him. Moreover, Martineau does not contest his conviction nor does he dispute that he was sentenced properly under the law as it existed at the time.[3]

B.  Irons Decision

Martineau first claims that his offense level, and thus his sentence, should be reduced in view of a recent Rhode Island state court decision which addressed the scope of two conflicting provisions of the Rhode Island Constitution. See William V. Irons v. The Rhode Island Ethics Commission, et al., C.A. No: PC 07-6666, decided by Rhode Island Superior Court Judge Francis Darigan, sitting in Providence County (the Superior Court decision). However, this Court takes judicial notice that this decision was appealed to the Rhode Island Supreme Court (RISC), which affirmed the Superior Court decision. See Irons v. Rhode Island Ethics Commission, 973 A.2d 1124 (R.I. 2009). Accordingly, this Court will treat the RISC decision as the operative decision in considering Martineau's claim.

In Irons, the RISC construed two separate provisions of the Rhode Island Constitution, namely a portion of article 6, section 5 ( the Speech in Debate Clause)[4] and article 3, sections 7 and

---

[3] Although it is questionable whether Martineau's motion to vacate was filed within the one-year limitations period set forth in 28 U.S.C. §2255(f), the Government, in its Response, has treated the motion as timely filed. (See Gov't Response at 1, n. 1.) Because the untimeliness of the filing of a §2255 motion is an affirmative defense, which the Government has waived, this Court will likewise treat the motion as timely filed. See United States v. Bandolph, 409 F.3d 155, 164-65 (3d Cir. 2005) (noting that untimeliness is an affirmative defense but it may be raised by the court sua sponte) (citing cases). See also Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002) ("Because the one-year statute of limitations is not jurisdictional, a federal habeas court is not duty-bound to consider the timeliness of a §2254 petition ..."; noting that limitations period "is more in the nature of an affirmative defense").

[4] R.I. Const., Article VI, section 5 provides in pertinent part:
"... For any speech in debate in either house, no member shall be questioned in any other place."

8, passed in 1986 (referred to as the Ethics Amendment).[5] The court considered whether the Ethics Amendment was intended to give the Rhode Island Ethics Commission limited jurisdiction to regulate "core legislative acts" of state legislators, notwithstanding the immunity that would normally apply to such acts under the speech in debate clause.[6] The RISC reviewed both provisions and determined that "the Ethics Amendment does not create an exception to the speech in debate clause" and, thus, "because the alleged actions of Senator Irons were core legislative acts entitled to speech-in-debate immunity, ... the Ethics Commission may not question him with respect to those acts." Irons, 973 A.2d at 1134.

Martineau contends that the Irons decision effected a change in the law that could have impacted the calculation of his own sentencing guideline had that state court decision been rendered prior to his sentencing under federal law. (See Pet. Mem. at 8.) Specifically, he argues that the charges against him were based solely on his failure to file a conflict of interest notice and were

---

[5] R.I. Const., §§ 7 and 8 provide:
§ 7. Ethical conduct
The people of the State of Rhode Island believe that public officials and employees must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable and responsive, avoid the appearance of impropriety and not use their position for private gain or advantage. Such persons shall hold their positions during good behavior.

§ 8. Ethics commission – Code of ethics
The general assembly shall establish an independent non-partisan ethics commission which shall adopt a code of ethics including, but not limited to, provisions on conflicts of interest, confidential information, use of position, contracts with government agencies and financial disclosure. All elected and appointed officials and employees of state and local government, of boards, commissions and agencies shall be subject to the code of ethics. The ethics commission shall have the authority to investigate violations of the code of ethics and to impose penalties, as provided by law; and the commission shall have the power to remove from office officials who are not subject to impeachment.

[6] The case arose when charges were brought in the Ethics Commission by two officers of Operation Clean Government against Irons, former President of the Rhode Island Senate, based upon acts that he committed in the scope of his duties as a state senator and Senate president. Irons, 973 A.2d at 1126-27.

otherwise based on core legislative actions, as in Irons. (Id. at 3-4.) Martineau further contends that in view of his pre-existing business relationship with CVS, he would have earned profits from that business in any event and thus, the loss calculated from his offenses should be recalculated and reduced from $911,435.24 to zero. (Id. at 5-7.)[7] This claim fails for several reasons.

First, as the Government points out, nowhere in Martineau's motion does he allege a claim under either the United States Constitution or any of the laws of the United States. His claim is based on a decision by the Rhode Island Supreme Court, which construes two provisions of the Rhode Island state constitution. While, as Martineau parenthetically notes (Pet. Mem. at 4), the Rhode Island speech in debate clause is similar to the Speech in Debate Clause set forth in the United States Constitution (Article I, § 6, clause 1), the Irons decision -- on which his claim is based -- construed the state constitutional clause, not the federal clause. Martineau does not argue otherwise. It is well established that there is no relief under §2255 based upon violations of state law, including state constitutions. See Addonizio, 442 U.S. at 184-185 (violations warranting relief under §2255 must be of federal constitutional, jurisdictional dimension or otherwise constitute a "fundamental defect" resulting in a "complete grave miscarriage of justice") (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). See also Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) ("Errors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised.") (citing Estelle v. McGuire, 502 U.S. 62, 67-68

---

[7] Martineau alternatively argues that in view of his pre-existing relationship with CVS, the loss from his offenses should be reduced from $911,435.24 to $195,400, thereby reducing his offense level from a level 21 to level 10. (Pet. Mem. at 8.) Presumably, this is based on including only profits from his dealings with Blue Cross. However, in view of the disposition herein, neither calculation of loss need be addressed.

(1991)). Thus, Martineau's claim fails for this reason alone.[8]

Second, as the Government points out, Martineau stipulated in his plea agreement to the amounts set forth therein, including payments of $716,435.24 received from CVS during the period 1999 through 2003 and the $195,100 in total billings to Blue Cross, approximately $175,000 of which was paid, for paper prescription bags. (See Plea Agreement at ¶ 5.) Martineau makes no claim that the plea agreement was coerced or otherwise involuntary. At the change of plea hearing, Martineau specifically agreed to those amounts when questioned by this Court. (See Transcript of Change of Plea Hearing conducted on November 2, 2007 ["Plea Tr."] at 10-11.) He also admitted billing Blue Cross for 10 million paper prescription bags, when in fact fewer than 2 million bags were manufactured and delivered. (Id. at 26-27; 32-33.) Thus, his attempt to counter the foregoing amounts by pointing to his business dealings with CVS in the years prior to 1998 fails.[9]

Third, U.S. Supreme Court precedent squarely holds that a speech in debate clause based on a state constitution or statute does not preclude federal criminal prosecution of an individual state legislator nor for acts which violate federal law. See United States v. Gillock, 445 U.S. 360 (1980). In Gillock, a Tennessee state senator and practicing attorney was charged with various federal crimes for accepting money as fees to use his public office to block an extradition and to introduce a

---

[8] To the extent that Martineau's claim might be construed as a guideline sentencing error under federal law, it fares no better. Even assuming such an error could ever constitute "a complete miscarriage of justice," see Knight v. United States 37 F.3d 769, 773-74 (1st Cir. 1994) (leaving open that question), the guideline sentencing calculation error alleged by Martineau here does not come close to constituting a miscarriage of justice.

[9] This Court also finds Martineau's characterization of his offense as a mere failure to file a notice of conflict of interest (Pet. Mem. at 3) to be inaccurate. Both the information and the facts he agreed to at the change of plea hearing described actions by Martineau that in effect constituted a quid pro quo, including payments by both CVS and Blue Cross for far more bags than were actually manufactured and delivered, at a time when he was in a position to influence pending legislation affecting one or both entities.

legislation favoring a select group of constituents. Id. at 362. The district court granted Gillock's motion to suppress all evidence of his legislative acts, finding that Gillock had an evidentiary privilege under the Tennessee Constitution equivalent to that granted to Members of Congress under the Speech or Debate Clause in the United States Constitution. Id. at 363. The Sixth Circuit Court of Appeals upheld the district court's ruling, but the Supreme Court reversed. The court held that in a federal criminal prosecution there is no legislative privilege that prevents the use of evidence of legislative acts. Id. at 366-74. The Court found that, " . . . the fact that there is an evidentiary privilege under the Tennessee Constitution, . . . , which Gillock could assert in a criminal prosecution in state court does not compel an analogous privilege in a federal prosecution. Id. at 368 (citation omitted).[10]

In short, Gillock teaches that state legislators are not immune for prosecution for federal crimes, even if they may be protected by a state speech in debate clause from prosecution for state offenses.[11] Here, Martineau was charged with federal offenses, and under Gillock, the Rhode Island speech in debate clause does not protect him from prosecution for those offenses. See also Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 30 (1st Cir. 1996) ("In Gillock, the Supreme Court carefully distinguished a State legislator's narrower right to absolute legislative immunity from private civil actions, which does not include immunity from federal criminal prosecution."). Thus,

---

[10] In reaching its conclusion, the Supreme Court stated that " . . . recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government in enforcing its criminal statutes with only speculative benefit to the state legislative process," id. at 373, and further noted that ". . . although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields." Id.

[11] Although decided 30 years ago, Gillock continues to be cited and followed by the lower courts. See e.g. United States v. Boender, 2010 WL 680952 (N.D.Ill. Feb. 23, 2010) (discussing rationale behind Gillock's holding); Loesel v. City of Frankenuth, 2010 WL 456931 (E.D.Mich. Feb. 4, 2010) (discussing Gillock rationale in refusing to quash subpoenas to city officials to testify in civil trial).

Martineau's reliance on the Rhode Island speech in debate clause, and the RISC's construction of that clause in Irons, is misplaced, and his claim fails for this reason as well.

B.   Good Conduct During Incarceration

Martineau further claims that because he has shown exemplary conduct during incarceration, this somehow justifies a reduction in his sentence. This claim does not require extended discussion.

It is well-established that a district court does not have the power to modify a sentence once imposed except as specifically provided by rule or statute. See United States v. Caraballo, 552 F.3d 6, 9 (1st Cir. 2008). Moreover, a district court has no authority to reduce or modify a sentence under §2255 based on good behavior during a prisoner's incarceration. See e.g. Silvers v. United States, 2010 WL 1491955 (April 14, 2010); Curtis v. United States, 2009 WL 124162 (E.D.Tenn. Jan. 14, 2009). See also Jung v. United States, 2009 WL 3575320 (N.D.Ill. Oct. 26, 2009) (good behavior during incarceration did not warrant modification of petitioner's sentence under §2255). Thus, Martineau's claim on this basis likewise fails. For the same reasons, Martineau's appeal to this Court to look at "the totality of the issues, including events subsequent to [his] plea" (see Reply at 1-2), likewise fails to state a ground for relief.

This Court has considered Martineau's other arguments and finds them to be without merit.

## CONCLUSION

In view of the foregoing considerations, Martineau's motion to vacate under § 2255 is hereby DENIED and dismissed.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA), because Martineau has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. §2253(c)(2).

Martineau is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> § 2255 Rule 11(a).

SO ORDERED:

_____
Mary M. Lisi
Chief United States District Judge
~~May~~ June 1, 2010